The next case is number 22-1471, Sandy Anderson v. Vagaro, Incorporated. At this time, would Attorney Sheehan please come up to the podium and introduce herself on the record. Good morning. Megan Sheehan for Appellants Sandy Anderson and Dharma Healing Center. I'd like to reserve two minutes for rebuttal. No, you'll get one minute. You don't have much time. Thank you, Your Honor. May it please the Court, we're here today because the Rhode Island District Court made an error in granting Vagaro's motion to dismiss based on lack of diversity jurisdiction.  Counsel, we know the facts. The only allegation I see in your complaint, the only two, are that out of this claim that a computer company with a $3,000 contract breached its contract and therefore damages are over $7 million. That's totally unsupported. The next assertion is that 8,000 customers quit going to your client, and that's directly attributable to the computer problems that your client had. All right, let's take 8,000 customers. When you were challenged as to the 75,000 jurisdictional amount, you chose to say nothing more but to rely on your pleadings. This is a holistic health center. It offers massages, reiki, the like. Even if there was a loss of 8,000 customers, how does that get you to $75,000? That's more than $9,000, about $9,300 per customer. And that inference doesn't seem to make sense to me. So Your Honor, what I would point to is that under Rhode Island law, that a plaintiff can recover for lost profits, and that the number alleged in the complaint. You said nothing to $7 million for a massage business? Your Honor, this is a You provided absolutely nothing once you were challenged. Your Honor, I would say that Vagarro failed to establish that it was a legal certainty that my client's business and the loss of profits was less than $75,000. This was an after school dog walking business. And the services they provided went to the core of the business. This was a successful business, as we noted in the complaint, with 8,000 customers. Well, here's what's puzzling. Your client and you presumably know what her profit and loss was during the year prior to this. You don't tell us that. She's presumably got tax returns. You presumably know how much she charges one of those customers. You presumably know how frequently those 8,000 customers come in one year. All this detail that's out there that would either confirm or deny that the dispute is over $75,000. And very puzzlingly, you chose to put none of it into the record in your original complaint. And then even when challenged, keep anyone from knowing that. It raises a pretty strong inference that you've got nothing. Your Honor, I would state in response to that question that, again, the effects in the complaint indicate the size of the business. And it's true we did not line itemize every area of damage. But that total number is this very specific number based off of those damages. But the damage measure is not gross revenues. The damage measure would be lost profits, presumably. Correct. You could have 8,000 customers and be hemorrhaging money left and right. You don't tell us whether the customers are profitable or how much each customer charges or what the costs are. It's just, hey, I've got 8,000 customers and I lost two employees. Therefore, I've been damaged $75,000. I'm missing several items in that equation. Your Honor, I would state that at this point in the complaint stage that it would be inappropriate for my client to have to provide financial documents to be a part of the public record.  You don't need to do that at all. You just needed to put in an allegation that said we made more than $50,000 last year and this will put us out of business for three or four years, so there's your $75,000. You just have to allege it. And you chose not to. And presumably, if you knew that that was untrue, that's why you couldn't allege it. Again, Your Honor, my position is that the legal certainty standard was not met. We outlined that this was a business in business for 10 years with 8,000 customers. And so again, it's not a small part-time business. This is a full-time business employing employees with many customers, and that it is not a legal certainty that it would fall below that $75,000. I'm sorry. I think you just clarified something. You mean the 8,000 customers is the total customer base that the business had, and the allegation is that because the business closed, your client lost 8,000 customers? Correct, Your Honor. That makes it even less likely. And again, under Rhode Island law, we're able to recover for damages, loss of profits. You're missing the point. Of course, you can recover all sorts of damages, but you have to put in enough to establish federal court jurisdiction. Unless there are any other questions, I'll conclude at this point. No, thank you. Thank you. Thank you, Counsel. At this time, would Attorney McDonald please introduce herself on the record to begin? Good morning, Your Honor. Sally McDonald on behalf of the defendant Apelli Vigaro, Inc. I will just make a few points to emphasize what we've already stated in our papers. Anderson's alleged to have operated Dharma Nutrition LLC for 10 years. However, the Rhode Island Secretary of State's website indicates that this LLC's certificate was revoked in mid-2015. It was not until 2018 that Anderson- That's not in the complaint, is it? No, I believe Your Honor could take judicial notice of what's on the Rhode Island Secretary of State, website, but it is not the complaint. You're correct. So in 2018, Anderson purchased Vigaro's client management software, alleged that she had some issues with the software, and then seven months later, closed the business entirely due to the software. It wasn't until 2021 that Anderson filed a complaint in the District Court of Rhode Island and demanded compensation in the amount of $7,186,785. And as Your Honor's point out- Again, what's the time frame between the filing of the complaint and when the events happened? Three years? Just about, Your Honor, but perhaps two and a half. Are you raising a statute of limitations defense? I'm not, but I think it's important for context. Well, what is the applicable statute? The applicable statute for breach of contract would be three years. Three years? Yes. So what happens then if this suit is thrown out? Your Honor, I think the suit should be thrown out. Normally, someone would just go replete in state court. That's correct, and she had the option to do so when it was dismissed in Rhode Island. She could have gone to California state court, which is where the contract provides she should have sued in the first place. And I think it really has to be noted that the $7 million figure is such a specific number that, as Your Honors have pointed out, there has to have been some way it was arrived at mathematically, and it shouldn't be a secret what that is. And it's concerning that it hasn't been revealed. I think that Vigar, when they argued that the complaint failed to allege sufficient facts to show that she meets the jurisdictional threshold, was certainly correct, but particularly because it was $3,000 that was paid for the product. And Anderson didn't allege that the $7 million loss was somehow reasonably foreseeable to a company selling a $3,000 product. But the issue isn't whether this is $7 million. The issue is, as some of the questioning show, it's puzzling why counsel didn't provide more data. But counsel does have a point that whatever they decided to provide, we've then got to decide whether that is sufficient under the very low-threshold test. And so why, given what they pled, they were in business for years, they had a number of employees, they had 8,000 customers, does that make it plausible that the loss of that would total over $75,000? I don't think so. And I think the important case law to look at is Abdel, Aleem, and also Stewart and Hardiman, all of which are cited in our papers. And what Abdel, Aleem stands for is really that conclusory statements are not sufficient particularities. So saying you lost profits, or you lost customers, or I had a lot of customers. But 8,000 is not conclusory. It's a particular number. Two employees lost is not conclusory. It's a particular number. My business closed, that's not conclusory. Well, there's, Your Honor, no dollar amount attached to those numbers. So maybe a massage costs $5 or $100. The burden is on the plaintiff to establish the $75,000 jurisdictional minimum. And she attached no dollar figures to what each of these customers was supposedly worth. So I would argue this is similar to Abdel, Aleem, as opposed to Stewart or Hardiman, where once jurisdiction was challenged, in Stewart, in response, they provided interrogatories documenting their injuries, medical reports, psychological evaluations. And in Hardiman, they provided an affidavit estimating the value of the lost wages and listing other lost benefits. This court has made it clear that if you want to survive such a motion, you can do so by amending your pleadings or submitting affidavits. And in this case, the plaintiff chose to do neither. Essentially, all that was provided in the response to the motion to dismiss was more bold statements that there were lost profits. So I would also like to add, Your Honors, that there's really two issues before the court here today. The second issue is whether the dismissal should be alternatively affirmed, because the complaint failed to state a claim upon which relief can be granted under 12b-6. So it's important to note that each claim in Anderson's complaint arises out of an alleged contract. And here, Anderson failed to identify what the contract was. But she alleges that she bought a product from your client. The product didn't work. It repeatedly didn't work, and it damaged her business. That sounds to me like a straightforward breach of contract case. The details to be fleshed out further. Well, Your Honor, I think that there is a burden on the plaintiff to establish what the contract is, what they were expected to receive. Presumably, the contract was that you provide software that worked. We don't require someone to say, I agree to sell you a new car. You agree to pay $10,000 for it. I didn't deliver the car, or the car didn't work. End of story. That's adequate pleading. So a typical, with a commercial product like software, I think a typical lawsuit would say, I want my money back for this failed product. I don't think that a $7 million loss is reasonably foreseeable based on a $3,000 product. And it was not alleged. There are no facts that suggest that Figueroa would have any reason to believe that they could cause such damage with their $3,000 product. Anything else? Let me ask you. You say $7 million. OK, but bring it down to $75,000. You have 8,000 customers. I assume these customers, I think it's reasonable to infer that if they're customers, they go every couple months, every once a month. But if you start multiplying that, and again, I don't think the services are like $5, $10. If you add that, wouldn't it add up to at least $75,000? Well, the important piece is, we have no idea. And then beyond that, this could have easily been fixed by an affidavit, which simply said, I had lost profits of $75,000. But there was nobody who would attest to this number, which I think is important. Or an affidavit saying, for example, the average customer goes five, six times a year, or once a month, and pays between $100,000 and $150,000, that would probably have crossed, in your opinion, the $75,000 threshold. Yes, I believe so, Your Honor. So just to follow up on the second argument, the alternative grounds on which you could have put it. Well, you say you have a definite contract. You provided it to the court. It has a forum provision. She has said, gee, I don't know if that's the contract or not. I would need discovery. But the district court, quite properly, looked first to the question of whether the federal court had any jurisdiction. That is normally where the federal court starts. That's correct, Your Honor. So they didn't need to reach the second argument. I just, with the time allotted, wanted to briefly address our second argument, which I think is also a winning argument, that you can't defer the inquiry about the terms of a contract to discovery. I think a contract was sufficiently referred to in the complaint, because it's a breach of contract complaint, and all of the claims arising from it. So to say, well, we don't know what the contract is, but we'll find out later. I think when there's a standard contract that goes with the product, that's almost something you can take judicial notice of. But in any event, Your Honor, if you don't have any further questions, I would just simply ask that the court affirm the district court's order. I think Judge McElroy's decision was very well reasoned. Thank you for your time. Thank you. If counsel for the appellant can reintroduce herself to begin, one minute. Megan Sheehan for Appellant Sandy Anderson and Dharma Healing Center. I'll keep my remarks very brief. So quick, this appeal is not on the terms of the contract. As Your Honor appropriately pointed out, the district court did not make a decision based off of that issue. This was a sale of services, not goods. Therefore, the UCC does not apply. And the Rhode Island law, again, is clear that lost profits can be recovered as damages. And lastly, I would say this case is very distinctly different from the Oddbell Allene case. In that case, it was a purely subjective emotional distress case in which the plaintiff put a million, round million dollar damages claim on it. In this case, again, we're talking about a well-established, very busy business that's been around for 10 years, a for-profit business. So those are distinctly different facts in each of these cases. So Ms. Sheehan, on the jurisdictional issue, just walk me through the math that you think I should be doing in my head as some possibility for you to get to $75,000. So this number came from my client working with her accountant to project the profits of the business. Just use your complaint, and connect what facts are in there. How do I get to $75,000 looking at that? Imagine it didn't say $75,000 at the end, and I looked at the complaint. How could I get to $75,000? Your Honor, the number was looking at what the average annual net revenue was for the company, and then multiplying that by future profits for the plaintiff. But that's not in the, the average isn't in the complaint. The average is not in the complaint, correct, Your Honor. Can you do it with just what's in the complaint? I can't at this time, no. Thank you. Thank you. Thank you, Your Honor. That concludes argument in this case.